UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NUSRETA D. o/b/o D.J.,

        Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06270 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Nusreta D. ("Plaintiff") brings this action on behalf of D.J., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 15), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 15) is denied.

**BACKGROUND**

On March 20, 2015, Plaintiff protectively filed an application for SSI on behalf of D.J., a child under the age of 18. (Dkt. 7 at 15, 146-151).[1] Plaintiff alleged D.J.'s disability began on March 20, 2015. (*Id.* at 15, 146). Plaintiff's application was initially denied on July 2, 2015. (*Id.* at 15, 100-105). On November 20, 2017, Plaintiff and D.J. appeared at a hearing in Rochester, New York, before administrative law judge ("ALJ") John P. Costello. (*Id.* at 15, 57-89). Plaintiff and D.J. were not represented by counsel at the hearing. (*Id.* at 61-62). On March 16, 2018, the ALJ issued an unfavorable decision. (*Id.* at 15-28). Plaintiff requested Appeals Council review, and her request was denied on February 6, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-9). This action followed.

**LEGAL STANDARD**

**I.   District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [plaintiff] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or

combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether D.J. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that D.J. was born on December 3, 2003, and therefore was a school-age child on March 20, 2015, the date the application was filed. (Dkt. 7 at 18). At step one, the ALJ determined that D.J. had not engaged in substantial gainful activity since March 20, 2015, the application date. (*Id.*).

At step two, the ALJ found that D.J. suffered from the severe impairments of anxiety/adjustment disorder and speech and language delays. (*Id.*).

At step three, the ALJ found that D.J. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 18). Similarly, the ALJ found that D.J. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.*). In making this determination, the ALJ considered D.J.'s functioning in each of the above-mentioned six domains and concluded that D.J. had a marked limitation in acquiring and using information, less than marked limitation in health and physical well-being, and no limitation in attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself. (*Id.* at 21-27). Accordingly, the ALJ found that D.J. was not disabled as defined in the Act. (*Id.* at 27).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly develop the record and weigh the opinion evidence of record, and (2) the ALJ's decision was not supported by substantial evidence because he improperly evaluated three of the six functional equivalence domains. (Dkt. 13-1 at 10-24). For the reasons set forth below, the Court finds that the ALJ failed

to develop the record and weigh opinion evidence, and this error necessitates remand for further administrative proceedings.

### A. <u>Failure to Develop the Record</u>

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17-CIV-5392-GBD-KHP, 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history,

the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id.* (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* (quotation and citation omitted).

In the written determination, the ALJ found that D.J. had the severe impairments of anxiety/adjustment disorder and speech and language delays. In concluding D.J. was not disabled, the ALJ gave great weight to the medical opinion from D.J.'s treating physician, David Sullo, M.D., the only medical opinion discussed in the decision. (Dkt. 7 at 21, 412-420). The ALJ acknowledged that Dr. Sullo was mistakenly provided with adult

employability assessment forms, rather than forms pertaining to disability relating to a child. Nonetheless, the ALJ relied on Dr. Sullo's opinion as follows:

> In December 2017, the claimant's pediatrician, David Sullo, M.D., completed employability assessments. Although the questions revolved around employment of an adult, he identified no physical or mental limitations (Ex. 6F; Ex. 7F). Great weight is accorded to the opinion of the treating pediatrician. The opinion is also consistent with treatment notes from 2017 and January 2018, which show minimal treatment for any mental health issues. Despite the claimant's mother's testimony that the Fluoxetine was not helpful, there is record of her ever telling a treating source.[2]

(*Id.* at 21).

Plaintiff argues that the fact that the ALJ sent the incorrect forms to Dr. Sullo, which are entitled "Ability to Do Work-Related Activities" and seek information relating to an adult's work-related limitations rather than assessments of a child's functional domains, constituted a failure to properly develop the record. Defendant argues that because the record upon which the ALJ based his determination was otherwise sufficient and the information contained in the forms were still relevant to a child's functions under the domains, that any error from relying on the incorrect forms was harmless. The Court disagrees, particularly where the ALJ's duty to develop the record was heightened where Plaintiff was proceeding *pro se* at the time, and where Dr. Sullo's opinion was the only medical opinion evidence relied upon by the ALJ in his decision.

As explained above, "[t]he ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has

---

[2] The Court presumes that the ALJ intended to indicate that there is "no record" of Plaintiff ever telling a treating source and inadvertently omitted the word no from the sentence.

- 8 -

permitted the ALJ to do so." *Sotososa*, 2016 WL 6517788 at *3 (quoting *Pratts*, 94 F.3d at 39). Here, the ALJ did not make every reasonable effort to assist Plaintiff in obtaining an appropriate and relevant medical opinion from D.J.'s treating physician. It is not clear that employability assessments for adults can operate as the functional equivalent of an assessment of functional domains for a child, even if there may be overlap with some of the information contained therein. In other words, while some of the answers provided by Dr. Sullo may provide insight into whether D.J. met the functional equivalence domains, it is not evident that the employability assessment forms can appropriately serve as a substitute for questions specifically directed to those domains, the critical issue before the ALJ. *See Davis v. Colvin*, No. 15-CV-479-MJR, 2016 WL 4708515, at *8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the ALJ's decision, the ALJ should have tried to obtain the records on his own. . . By not doing so, the ALJ created a gap in the record that necessitates remand."). Here, the lack of pertinent questioning created a gap in the record which raises a real question as to whether the ALJ could meet his obligation to employ a "whole child," approach as required.

### B. Weighing of Opinion Evidence

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. *Lugo Rodriguez v. Berryhill*, No. 3:17-CV-00093 (VLB), 2018 WL 1135330, at *5 (D. Conn. Mar. 2, 2018) (citing 20 C.F.R. § 404.1527(c)); *see also Wider*

*v. Colvin*, 245 F. Supp. 3d 381, 388 (E.D.N.Y. 2017). Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin,* No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that he or she applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). An ALJ's failure to properly evaluate medical opinions in the record may "hinder[ ] the Court's ability to determine whether the ALJ's decision is supported by substantial evidence." *Felton v. Astrue*, No. 09-CV-0538 (LEK), 2010 WL 3880628, at *5 (N.D.N.Y. Sept. 10, 2018) (remand required where ALJ failed to evaluate various medical opinions in the record, including opinions offered by psychologists), *report and recommendation adopted*, 2010 WL 3842808 (N.D.N.Y. Sept. 28, 2010). The failure to assign a specific weight to an opinion may be harmless error, particularly where the ALJ engages in a detailed discussion of the evidence and the ALJ's conclusion is

consistent with the opinion. *See Buscemi v. Colvin*, No. 13-CV-6088P, 2014 WL 4772567, at *13 (W.D.N.Y. Sept. 24, 2014).

Here, the record contains opinions from non-examining state agency sources, Speech Language Pathologist J. Weir and T. Harding, Ph.D. (Dkt. 7 at 91-95, 397-98, 399-400). The ALJ did not discuss either opinion in the decision and accordingly, it is not clear whether the opinions were considered. Both SLP Weir and Dr. Harding opined that D.J. did not meet the Listing level, but opined that D.J. had marked limitations in acquiring and using information, less than marked limitations in interaction and relating with others, and no limitations in attending and completing tasks, moving about and manipulating objects, caring for himself, and health and well-being. (*Id.* at 95-96). The fact that these opinions were consistent with the ALJ's determination could arguably make the ALJ's failure to discuss and consider them harmless, *see Buscemi*, 2014 WL 4772567, at *13 (where ALJ engaged in a "detailed discussion" of opinion evidence, and that evidence was "generally consistent" with ALJ's conclusions, "any failure to assign a specific weight . . . was . . . harmless and [did] not require remand"), but in light of the other deficiencies present, the failure to acknowledge the opinions further suggests an additional lack of attention to detail that warrants remand to allow for a fuller review of the record.

In sum, the ALJ issued his determination based on a medical opinion he knew was not directly applicable to the matters before him. The use of a correct assessment form in this context is important and could influence the ALJ's analysis of opinion evidence in the record. In addition, the ALJ should comply with the requirement to consider and weigh

the various medical opinions of record. On remand, the ALJ is directed to exercise his duty to develop the record to ensure that it is complete and accurate.

### C. Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

- 13 -

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 16, 2021
         Rochester, New York